The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw a 9 and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated. Welcome you all to the Fourth Circuit this afternoon. And I think we're all pleased that we didn't try to get here for yesterday morning. But our only case right now is Powell v. The Huntington National Bank. Mr. Norica, did I pronounce that pretty close? Pretty close. Thank you. Pleased to hear from you, sir. May it please the Court, good afternoon. My name is Keith Norica and I represent the Huntington National Bank in this case. And I wish to reserve seven minutes for rebuttal. Three unanimous Supreme Court decisions interpreting Section 85 of the National Bank Act compel a reversal of the district court's order in this case. First, there's Justice Brennan's decision of 1978 in Marquette against First of Omaha, which held that a national bank, its federal rate of interest that it may charge is determined by the law of where its main office is located and that then that rate of interest may be exported on a 50-state basis, notwithstanding contrary. Can you explain to me in simple terms why this is a rate of interest case, why this is a usury case? Yep. Well, so, Your Honor, this was actually determined by the Supreme Court in the Smiley case, which is another unanimous Supreme Court case. I don't think that's the answer that's going to be persuasive to me. No, I understand. The Supreme Court hasn't decided this case. No, no. We have to decide this case. Yes, I understand. And so, as I understand the plaintiff's claim, you can charge whatever interest you want. The question here is, can you charge for a month following a month where you can charge? It has nothing to do with the rate, as I understand it, correct? Well, Your Honor, a late fee is an amount of interest that is interest under Section 85 that's exportable. And this exact question was raised as an argument in the Smiley case by Smiley. It wasn't decided. Well, yes, it was, Your Honor. It was, if you read Justice Scalia's opinion, he expressly decides this issue and rejects it because he, you know, in whatever, you know, it was a unanimous decision, but the court decides they went back and they looked at the OCC's regulation interpreting Section 85, giving it deference under the Chevron doctrine, and they had to determine whether it was reasonable. And they went and they looked at, you may not find this persuasive, but it was persuasive to nine justices. They looked at the definition of what interest rate and a rate of interest was in 1870 when the National Bank Act was enacted, and it included flat fees of interest. And on top of that, the third unanimous Supreme Court case, when you put them all together, is an opinion by Justice Oliver Wendell Holmes, also for nine justices, which held that the rate of interest determined under Section 85 includes the frequency with which interest is charged. And so that's Citizens National Bank against Donald. So when you put all three of those together, a late fee is interest under Smiley. We know that. The Supreme Court has held that. The amount of times you can charge the interest is part of Section 85 interest where you look to the home state, and then under Justice Brennan's decision in Marquette where you can export that based on what the home state says. You have a problem here because Ohio law, which is the National Bank's main office state, says that a national bank can charge late fees in a posting order, in a manner, in a frequency, with which they did it here, pursuant to the deed. This comes up on a motion for judgment on the pleading? Correct, Your Honor, yes. And an interlocutory appeal. Yes. You have to accept the allegations of the complaint as true. Correct, Your Honor. And they allege, according to Judge Johnston, that you charge a late fee at months where no late payment was made. Well, I think if you're... Judge Johnston says the complaint, read, and the like, they have to read it, charges a fee where no late payment was made. So is it your position that you can charge a late fee when there was no late payment? Well, that is only... There's only no late payment if the West Virginia statute is not preempted under the Marquette Doctrine, because the deed itself allows for the charging. Under the complaint was a late fee charged when no late payment was made in October and then again in November. Well, again, Your Honor, the allegation in the complaint is... You have to accept it as true. No, I understand. I mean, that's up here, and we gave you an interlocutory appeal, or we've authorized it so far, to present an issue to us that you say is a controlling, whether there's a preemption or something. I'm not sure what this question is even, but I know that Judge Johnston says the complaint, the way he reads it, alleges that you charged the late fee of $15 when no late payment was made. And he says you can't do that. You know, that doesn't impact the national banking law at all. I mean, you don't say you can charge a late fee when no late payment has been made, do you? Well, Your Honor, if you're asking... It's not like me stealing. I mean, it would be common law then. Your Honor, I think what you're asking is whether we charged a late fee in violation of our contract with the bar. No, I'm not. I'm asking what the complaint alleges, if you're willing to accept those allegations as being the allegations of the complaint. That's the way he ruled on the basis of those being the facts. He had to take them. Now, do you think he... But, Your Honor, you're not making an allegation of fact. You're making an allegation of law. He's taking the fact that no late payment was made in October or November. But it's only not a late payment made because of the posting as dictated under the West Virginia statute. He says there was no late payment made in October and no late payment in November, yet there was a late fee charge and that you can't do that. So you have to accept, unless you can tell us that you don't have to accept the allegations of the complaint on the judgment on the pleadings. Well, Your Honor, I think everyone does not dispute that there was only one payment that was not received. The question at issue is whether, under the contract and under federal law, that the bank can allocate the later received payment to the earlier unreceived payment that's due. And if that's the case... Is that what you did? Yes. So you say there was a late payment made when? So, because the first payment was never received. When was that? That was in September, I believe. Well, is that alleged of the complaint? Yes. Okay. So there was a payment not received in September. And there was a late fee charged on that? There was a late fee charged on that. When was it paid? Well, I think it was only paid whenever they started repaying their payment. So you got an October payment? Correct. You took the money off the top to pay the late fee? No, no, no. So that actually did not happen here. But what happened is we took the October payment and we applied it to the September payment. And then there was no October payment then, so a late fee was charged. And then that happened again in November. The November payment was received. It was applied to October. And that is allowed under Section 3 of the deed. And that is allowed under... It sounds to me like you all and you and you all, particularly your side and Judge Johnston, disagree on the fact. No, I think everyone agrees that that is the fact. I think the real question is whether the West Virginia statute requires us to take that payment we received in October and apply it to October. And Smiley doesn't have anything to say about that. But Donald does. Hold on. Donald does. Hold on. Yes. Smiley has nothing to say about that. And so how does Donald help you? Well, Donald is a case that says the frequency with which interest can be charged is part of the interest calculation where you look at the home state and you put that into Section 85 of what, and then when you sort of churn that through Marquette, it's exportable. And it has more to do with late fees. So, I mean, if late fees sort of are not everyone's favorite thing, you have to think maybe more broadly about what ramifications an adverse ruling here would have because, for instance, if a home state allows compounding of interest, then you could imagine there being an issue if that Donald rule was not there and it didn't allow the frequency with which it was charged. And that's, in fact, what Donald was about. It was compounding of interest. Well, that's basically what this is here. See, your problem is you got seduced by the notion of complete preemption on the removal. And all this stuff you've been talking about is about matters in defense. Well, no, Your Honor. You know, avoidance. And you're trying to convert all kinds of questions of factual allegations. It doesn't have anything to do with what people agree. The question is, on a complaint, what are the factual allegations? And I don't think they're in dispute. And the factual allegations don't present, as a matter of law, as I understand it, any dispositive of a question of law. Well, Your Honor, I beg to disagree. Of course you do because you're here on a Tuesday. But, Your Honor, Your Honor. No, you have to wait until we be quiet before you start talking. And that applies to all three of us. All three of us. You're trying to convert into a question of law what clearly is simply a pleading question. All you had to do was wait until the case was at issue, maybe a little discovery, and then file your motion because this is a question of defensive preemption. That's what's going on here. And you raise defensive preemption in your reply brief in the district court. That's where we are. And Judge Johnston hasn't said a word about defensive preemption in this order that is before us. His order is all about Section 85 of the National Bank Act. I wouldn't talk over him. I'm sorry, Your Honor. I'm just looking at my time ticking away. Don't you worry about your time. You've got all afternoon. We're not going to rush you. Wonderful. We're not going to rush you. Okay. But let the judges finish whatever they're saying or whatever the question is. Of course. And then you answer best you can. Okay. So the way complete preemption works in Section 85, Section 86 context is complete preemption, if you read under the beneficial decision by Justice Stevens, includes both a jurisdictional component and a defensive. So if a state claim is brought that's a usury claim, it can be removed as an exception to the well-pleaded complaint rule. But then it's also governed by Section 85. And so what happened here. But as Judge King pointed out, the district court here didn't view this as a usury claim. Now, you can disagree with that, and you do, but that's the record before us. So if it's not a usury claim, it's not a usury claim for purposes of the pleading. Okay. So my response to that is Section 85 operates regardless of whether it's a usury claim. That's what Smiley held. There was a state UDAP claim there that was held preempted by Section 85. And the fact is we don't need complete preemption, but we've always asserted Section 85 defensive preemption because that's part and parcel. It was a motion for judgment on the pleadings. It wasn't a motion for removal. And at that point, we already had federal jurisdiction under the Class Action Fairness Act. So I'm sorry to go over that. You go ahead. Okay. No, I think that answers it. No, you go ahead. Do you have other things you want to say? No, no. I have the rest of the time for rebuttal, so I'm happy to use that. Okay. No, but I'm not going to charge against you. Okay. No, I appreciate it. Yes. Judge Johnston says the word usury appears nowhere on the face of the complaint. Do you agree with that? Yes, I do. He says plaintiff's theory is that defendants' practice of assessing a late fee in a month where plaintiffs made a timely payment violated the terms of the loan contract and also questioned your law. So their theory is that the late fee is where you made a timely payment. You don't claim that you can charge a late fee where they made a timely payment, do you? No. Okay. Okay. Thank you, Your Honor. I'll be back. That sounds threatening. Ms. Rosenbaum? If you may, it pleases the Court, Adina Rosenbaum on behalf of Jeremy and Tina Powell. I would like to start with the question of what's before this Court under 1292B. Can we just clarify that you've abandoned or have you not abandoned your breach of contract claim? No. We still have claims that the bank's actions here violated the mortgage loan. You do. What are we doing here? Yeah, what are we doing here, if that's true? Because the case isn't over in the district court. We agree that the case is not over and that those claims survive any preemption analysis. So what are we doing here in Richmond on an interlocutory appeal? That's, I think, something that you'll have to ask the bank. Ask the bank. They petitioned, but you didn't oppose it, did you? We did oppose the interlocutory appeal petition. Okay. Yes. And we think that the bank's actions violated the loan agreement in two ways. First, that the note did not allow for charging late fees in months in which a payment, a full payment, had been made. And then also- He just said, that was the last question I asked him, and he said they didn't do that. Your complaint says they did that. They did do that, and the complaint says that they did that. So you all simply disagree on the facts. So how can we decide an interlocutory appeal when there's a dispute of fact? I mean, we do think that it violates the note that they charged a late fee in months in which a full payment was made. They said they didn't do it. They didn't charge a late fee for the time the payment was made. He says that's what he says. Johnston says that's what is alleged, and you say that's what is alleged. That is what is alleged. So that has to be the fact that we take for purpose in this case, in your view, correct? Yes. The other way in which their action violated the mortgage loan documents is that the security instrument says that it will be governed by federal law and the law of the state in which the property is located, which here is West Virginia. Are the loan documents incorporated as a matter of law into your complaint? I am not certain whether – they are in the record in this case. They're in the record, but are they attached to the complaint, or are they incorporated by reference in the complaint? The complaint does state that the loan violated the mortgage documents. There are allegations about them, but they weren't attached to the complaint. And they weren't, I don't think, filed by the other side. I think you filed them as part of a reply brief or something, as an attachment to a brief. I know that they were put into the record, but I'm not sure whether they were attached to a pleading or to a brief below. But we'd have to go outside the pleadings to get to the loan documents or take judicial notice of them or something. They are mentioned in the complaint, and they are in the record. I'm not certain whether or not they were part of the allegations. The other issue in terms of the 1292 jurisdiction is the question of complete versus defensive preemption in this case. And Huntington moved to dismiss solely on the grounds that Sections 85 and 86 completely preempt the Powell's claims. That is, it moved to dismiss solely on the ground that the cause of action created by Section 86 provides the exclusive remedy for the type of claim at issue here, such that the claim is, in fact, a federal claim. And then they argued that we had not stated a federal cause of action. That's what complete preemption means, that the federal statute provides the exclusive cause of action. That was the only argument in their motion to dismiss and the only preemption issue decided by the court below. And because of that, it's the only issue before this court under 1292B. Huntington has now made clear it's not relying on complete preemption or the exclusive remedy in Section 86. Particularly, it says in footnote 1 on page 6 of its reply that this case is about whether West Virginia law is preempted by Section 85 and that Section 86 is not applicable to that preemption defense. So because Huntington has now made clear that it's no longer making the argument, that's the one that was decided by the district court below, we do think that this 1292B appeal was improvidently granted. But I thought counsel just a few minutes ago said that complete preemption includes defensive preemption. Did I not hear that correctly? He did say that. They do incorporate the same standard and we particularly do think that any violation of Section 85 or anything that Section 85 preempts would then be covered by the exclusive review provision of Section 86. But the theory that they moved for preemption wasn't that they had a defense. Their theory was that these claims were actually federal claims and that we didn't state a cause of action. So they are theories. One is about what type of cause of action it is, whether it's federal or state, and therefore can be removed, and the other is a defense. And so we think that that defensive preemption is not before the court. Moving on to the merits of Sections 85 and 86, those provisions are usury provisions. They are concerned with the interest rates charged by banks. They set the maximum interest rate that a bank can charge. They provide a cause of action for claims that a bank charged a higher interest rate than allowed. And together they completely preempt state law usury claims, claims that a national bank charged a greater interest rate than allowed. Here, though, the Powell's claims are not about the interest rate charged by the bank. What the Powell's challenge is- And it's not even about frequency. No, it's not about frequency. As you have framed your claim. No, our claim is that they illegally applied payments to past installments, leading them to charge late fees that were not due at all. And so it's about charging late fees when no late fees were owed, not about the amount of the interest. Your claim is that once you miss a payment or make a late payment, but you make all subsequent payments on time, in effect what they're doing is, under your allegations, is they're repeating a late charge that's not due and owing, no matter what the rate is. Yes, exactly. That's your theory. Exactly. So they have continued to charge a late fee for every month, even though there was only one month where the payment was late. Exactly. And that's not about- When was the payment made here, September? Right, September. And then they charged late fees. And then you made an October payment timely. Yes. Is that accrediting it timely? They credited it to the September payment? Yes. And charged you a late fee on the late payment for October. Yes. And a late payment for the- And then they did the same thing in November. Did the same thing in November. You're saying they should have credited you with paying the October payment and then the November payment. Right, and then they shouldn't have been charging a late fee at all. So the claims are not about- Well, but they say that this is really just a novel form of compounding interest by requiring the payment of additional late fees if you're delayed in making a payment. How is this different? Because clearly if we were talking about an excess amount of compounded interest, you wouldn't be here. You wouldn't be able to challenge that. I think compounding really goes to the amount of interest and to the interest rate that is charged. Often interest rates are expressed in compounded numbers. But our claim here is not about the amount of interest. It's not that the bank would not charge- Well, I mean, it is. It's about money in the end, right? It's about how much one is being charged. But I get your point that the theory here is that they weren't entitled to do this at all. Right. Our claim isn't that they couldn't charge $15 in a late fee or even that there aren't circumstances in which they could have charged $45 over three months. It's not about the amount of the late fee charged. It's about their illegal application of payments to prior months, leading them to charge late fees. What are they supposed to do about the unpaid September payment? I mean, a late fee was paid for that amount. And it was paid when? I believe it was paid with the October payment. It was paid? The late fee was paid. The late fee was paid, but the payment for the unpaid September payment was never paid? I am not aware of that. You're not aware of it being paid, or you just don't know what the answer is? I don't know what the answer is to that. I'm sorry. Now, that seems to hurt. If, in fact, there was no September payment at all, and then the October payment included a late charge, even though you're saying the October payment was not late, that makes it look like the September payment. Do you follow me? Well, it was a payment in October of the monthly payment that was owed in October. So it wasn't meant to be the September payment. But was the late charge included in the October payment? I mean, we're getting outside the record here. The late fee, the $50 late fee, was paid with the October payment. Well, that makes it look like a payment of the September mortgage payment. Because there was no late charge due in October, according to your complaint. So why would you pay a late charge when none was due? Well, it was the late charge for September was being paid, but then the payment was the October monthly payment that was due. I see. So under your theory, the September payment is still outstanding? As of October, yes. As of October and as of November? Yes. I think, in my recollection of the record, is that the late payment was made in November with the November payment. Now, when you sent that what you call the October payment in, you used the October payslip or whatever it is they give you? Coupon. Coupon. It was meant to be the October monthly payment. Was it marked on the check and you used the October coupon? I don't believe it's in the record. Well, maybe they innocently applied it. Well, but the West Virginia law forbids them from doing that. The West Virginia statute provides that they have to apply payments to current installments rather than to past installments. And we believe that the note requires that as well, that it forbids charging late fees when a full payment was made for that month. So those are the claims at issue in this case. Suppose so long as the September payment remains due and owing, they can continue to charge interest on that payment as part of the balance of the loan, right? They can continue to charge interest, but there was a certain payment that was due for the month, and that payment was paid in October and November. But only for October, not for September. Not for September. September had not yet been paid. So that balance remains on the books and interest continues to accrue, right? Interest would continue to accrue on the balance, but there was a specific amount. They continue to accrue on the unpaid September payment. Yes. They'd be entitled to their interest on there. They're entitled to the interest that accrues on the loan balance. But there was a loan payment made in that month. That was the amount that was due that month. Not in September. You said no loan payment was made. Not in September, but in October. October and November. Yes. And under the West Virginia statute at issue here, they had to apply, they were required to apply the payments for October and November to the installments due in October and November, not to the installment due in September. And what if you all... That's what they violated here. And what if you all here can't agree on the facts? What do we do with this appeal? Well, this is an appeal of a motion for judgment on the pleading, so the facts should be viewed in the light most favorable to the non-moving party. So they have to take them in your light, the light most favorable to you. Yes. And if they won't do that, what do we do with the appeal? Dismiss it? You can dismiss it as improvidently granted. You can decide it based on the facts viewed in the light most favorable to the plaintiff. What do you want us to do? I mean, we think that... We're entitled to have you tell us what we ought to do. They want us to reverse. And although I still don't know, none of you have talked about what the controlling issue is of law that has to which there's a substantial ground for difference of opinion because the judge didn't adopt the one they proposed, and that you didn't object to it, I don't think. And then whatever it is up here is kind of vague and broad. I mean, we did object to their motion for permission to appeal and to their... No, but it's a question. You're supposed to give us a question that's characterized as the controlling issue of law as to which there's a substantial ground for difference of opinion. And the judge specifically said, I will not certify the one that they proposed. And he said, this is what I'll certify. And he said, what it is. And none of you have ever tried to question that. Well, I do think that that question presumes that what's at issue is complete preemption. The certified question does specifically go discuss both Sections 85 and 86, and they have now abandoned all arguments about Section 86, which is the issue at issue here, whether this is actually a federal call to action under Section 1986. Sorry, under Section 86 of the National Bank Act. So we do think that that question is no longer at issue here. But we also do think that none of the claims that are at issue here are preempted by Sections 85 and 86, either as a matter of complete preemption or on defense of preemption because they're not going to the interest rate. They challenge the illegal accounting practices of applying payments to prior months in violation of West Virginia law that led to the charging of late fees that were not due at all. If you're right, does that mean that the bank's only remedy is to declare a default and accelerate all payments and foreclosures? What's the bank's? You don't represent the bank. I understand that. But what's the bank's remedy? Well, the bank did collect a late fee for the missed payments, and there could be ramifications for the missed payments. But the payment hasn't been made. Presumably, there would end up being an additional payment at the end of the loan term. Eventually, that payment will be made. So 30 years later, they collect a little more money? And presumably, then, if they carry over the interest, then interest could, I would think, continue to accrue. But in terms of making a payment, the payment has to be applied under West Virginia law to the current installment before it's applied to the prior installment. And that's not a law about interest rates. That's a law about accounting practices that led to the bank. So a mortgagor could, like, skip six mortgage payments a year and worry about it at the end of the term? I mean, I'm not sure I'm following. They could. Late fees would still be due for those. But only six. For things that were. But you say only six late fees. Well. Forever and ever. Under the statute, they would be required, when a payment is made, to apply that payment to the current installment. Well, you used that as an example that they just make every other payment. Right? And. You said six? In the year? And then late fees would only be due for the payments that were missed, not for the ones that were paid on time, because the payments would have to be applied to the current installment rather than to past ones. So it's the West Virginia law and or the contract? Yes. Which one? Both. Both. And that's partially because the contract, the security instrument says that it will be. You said the contract says that? Says it will be governed by West Virginia law. And this court has recognized. But the contract's not in the record. The contract is in the record. I'm not positive whether or not it was attached. It's either in the record or it's not. And you didn't file it, or you did. The security instrument and note are part of the record below. They were filed as part of a brief and a reply brief. This is a motion for judgment on the pleadings. Well, in our allegations. So how did they get into the record? And our allegations are that. Allegations. Allegations that they violated the mortgage loan documents also. I'd like to quickly address the question of Smiley. Smiley doesn't talk about the types of claims at issue here. Smiley, the question presented there was about what constitutes interest, and we don't question that late fees are interest. The Huntington has argued that our claim is really one about flat rate fees, but that's not what our claim is. We're not challenging the fees here because they were fixed at $15 rather than as some percentage. Our claim is not about the amount of interest at all about the $15. It's that the bank engaged in a practice of applying fees, applying payments to past installments that led it to charge fees that were not due at all in the months in which the Powells made full payments. They've also emphasized the fact that the claims in Smiley were not labeled usury claims, but that's also a red herring because our position isn't that the claims have to be labeled usury claims or brought under a usury statute. Our claim is that they have to be usury claims. Claims challenging the excessive rate of interest. But again, our claims here aren't about an excessive interest rate charged by the banks. They're about the practice of applying payments to past installments contrary to West Virginia law that led to the charging of late fees that were not due. The claims here also are not otherwise preempted by the National Bank Act. Huntington brought up a conflict preemption theory, but regardless of whether defensive preemption is before this court under 1292B, that theory is not, it was not addressed at all by the district court. And in any event, the claims here are not preempted under that theory, which would require the claims, the law at issue to prevent or significantly interfere with the bank's ability to engage in the business of banking. And here, Huntington has made no showing that this state law significantly interferes  unless you have any further questions. Thank you. Thank you very much. Yes, sir. All right. Thank you very much for having me back. Your Honor, I think, well, first, just as a policy matter, I think, you know, Judge Davis, you have it exactly right that what we've heard from the appellees here is that they, it's undisputed, they've never paid their September payment, ever. And what I fear is, you know, even just as a policy matter, they are in breach of the agreement. And, you know, sort of the lesser of all evils is being charged $30 extra in interest as opposed to, you know, having your mortgage declared in default and, you know, going through foreclosure or something horrible like that. And so, you know, I think it just sort of is bared in mind that that sort of is hanging out there. And I think that that was sort of, you know, very well put in the prior questioning. Now, I do want to take issue a bit with the appellee's characterization that they allege a breach of contract. In their complaint, when you read it, it alleges that the bank can't charge more than one $15 fee per missed payment. And I think the question here is that's not disputed. The question is, you know, was there one missed payment or were there three missed payments? And on that issue, the only issue is whether West Virginia law requires that payment that's received to go to the, say, October as opposed to September. And that, we submit, is an issue that is, quote, material to the determination of interest, which is then determined by the, quote, home state law under Section 85 and exportable under Marquette. So that's sort of the basic claim. Now, you know, when we further look at the complaint about whether they have alleged a breach of contract, there is no claim that there's a breach of contract, and it's not even an element of any claim in the complaint. And further, the remedies sought are not remedies for a breach of contract in the complaint. It's for statutory penalties under the West Virginia Consumer Protection Act. It's for attorney's fees. And certainly I don't think this case goes away as much as you may want it to if there even were a breach of contract, because you have those remedies out there that are being sought, that are based solely on whether this West Virginia statute is preempted or not. Which West Virginia statute are you talking about? Absolutely. The West Virginia statute you're talking about. Yes. This you say ought to be preempted. Yes. Yes, sir. What is it? So this is West Virginia Statute 46A-3-112, and then I believe the offending subparagraph is subparagraph 3, which actually does specifically tell the bank that it has to apply the later received payment to the most current payment due, as opposed to the old payment. That would be what she's relying on when she says the October payment has to be applied to the October installment. Correct. Exactly. And not to the September installment. Absolutely. And you say that doesn't hold up. Well, it doesn't hold up because we acknowledge it's required by the West Virginia law. So is that the real issue that should be certified here? Correct. And that's not the issue that was certified. Well, the district judge – That's not the issue that was certified. The district judge did seek your guidance, and we believe that's what was raised by the motion. We don't give advisory opinion. No, I understand that, Your Honor, but there's certainly a concrete – Did the district judge decide that issue? Yes, he did. He decided that – Why didn't you all get him to certify that issue? Well, we tried to get our question certified, but he ended up certifying – He rejected your question. And he certified the question as presented by the appellees. But under the Yamaha Motors decision by the Supreme Court, your jurisdiction is over the order rather than necessarily his questions. You're not bound by what question he certifies. We can restrain the question ourselves. We can also decide not to exercise our jurisdiction under 1292B for any reason. Well, we thank you for exercising it so far, and we hope that you will continue to. We can decline to exercise it for any reason. Right. No, and I understand that, Your Honor. We can think it really premature. Yes. And we don't have to even say that. We can just enter an order, say an appeal, dismiss. Well, we hope not, Your Honor. No, I know you don't want us to, but we could. This 1292B, we saved for – it's a rare remedy. It's rare, but – But, frankly, what's rare is – What's rare in my experience is that the district judge who ruled against us actually thought that this, on reconsideration, that it was – there was – you know, it meant all the factors. And, frankly, I've been practicing – No, no, but I – Yes, he does. He has to certify it. No, no, before we can take a – Oh, I know that. And I said, what surprises me is that he did it, right? You know, that in my 20 years of practicing, that's the first time ever. And then you all came and agreed as well. So, you know, I think we've gotten this far, and there certainly are some 1292B cases out there that say – You think we ought to frame the question – reframe the question – Yes, Your Honor. – to be whether West Virginia law required the October payment to go to the October installment. Yes. Or can it be – could it be properly applied to the September installment? And whether that West Virginia law, under those circumstances, is preempted by Section 85 of the National Bank Act. That's pretty complex. I've been laboring in these vineyards for about 20 years, so it's – it just rolls off my tongue. So – but I do – we do very much appreciate that this is a very arcane area of the law. You know, it's – Which facilitates in favor of leaving it in the district court for mature consideration by the district court, so that we have the benefit of your learning, what you teach the district court, the adversarial process. These kinds of issues shouldn't pop up out of the ether to the circuit court. Well, with all due respect, I mean, it hasn't. You know, we believe there's 150 years of precedent, both agency and otherwise, behind this. And, you know, it certainly caught the district court's attention. And he's actually entered a state of discovery, because he does think there's such a reasonable – They haven't come along with us taking this appeal. What? That would normally come along with us taking this appeal. No, no, it wouldn't actually. No, it would. Oh, okay. I've been in a few of these things myself. Oh, okay. The court doesn't have to stay in proceedings, but they generally do. Okay. Because they're waiting for the court – the court of appeals to answer this controlling question of law. Right. As to which there's substantial grounds for differences of opinion, which is going to materially assist in the resolution of the case. So the stay does come along normally. It doesn't have to do it. Right. And so you say he's done it here. But as I said, I mean, in my 20 years of practicing – and certainly, you know, my specialty is in the National Bank Act and National Bank Act preemption. But, you know, we've litigated a lot of cases, and I have never seen that happen. And, you know, it was refreshing that the judge, you know, was thought that there was legitimate disagreement between – that a reasonable jurisdiction. But it looks like y'all could have agreed on what the issue was before you came up here. Well, we tried. There's only so much I could get out of this. But we do appreciate your time here, and thank you very much. We're happy to answer more questions if you have them. I said I'd stay here all afternoon. But we do appreciate it. Thank you so much. Let me ask Ms. Rosenbaum what you think of his reframing of the question. I don't think that the question on the merits of what's required by the West Virginia law is before this court. In terms of the question of whether the West Virginia statute is preempted, again, we think that what the district court decided was a question of complete preemption, not a question of defensive preemption. And they're no longer arguing complete preemption. They abandoned that in their reply brief. So I think the question of defensive preemption also is not included within the scope of the 1292B appeal. Since you brought her up here, what exactly is your breach of contract claim that still exists in this record? Our claim is that it was illegal for them under the mortgage loan documents to charge a late fee in a month in which a timely payment was made, based on the language in the note. The contract doesn't say anything about that, does it? The contract does talk about a late fee if the monthly payment is made. And then also the security instrument provides that it will be governed by federal law and the law in which the property is located. And the property was located in West Virginia. So the bank has voluntarily agreed to be bound by West Virginia law, which would include the law about the application of payments to prior installments. All right. Thank you very much. Thank you very much. Thank all of you very much. And we'll come down and reconcile and adjourn court until tomorrow morning. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Albert Diaz, Andre M. Davis